Sol Luis Descartes, Tesorero de Puerto Rico, peticionario, v. Tribunal de Contribuciones de Puerto Rico, demandado; Royal Crown Bottling Co. of Puerto Rico, Inc., interventora.

Núm. 247.—*Sometido:* Febrero 2, 1951. *Resuelto:* Marzo 21, 1951.

*Hon. Procurador General Víctor Gutiérrez Franqui (Vicente Géigel Polanco, Ex Procurador General, en el alegato) y J. B. Fernández Badillo, abogados del peticionario; Jorge M. Morales y Ramón L. Nevares, abogados de la interventora, querellante en el pleito principal.*

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El 7 de octubre de 1949 el Tesorero notificó a la Royal Crown Bottling Company of Puerto Rico, Inc. que su contribución territorial sobre sus bienes muebles e inmuebles para el año 1949–50 ascendía a $6,917.26. La corporación decidió impugnar esta contribución bajo la teoría de que sus propiedades habían sido tasadas por el Tesorero en una cantidad excesiva. Procedió, pues, el 4 de noviembre de 1949 a ofrecer al Colector de Rentas Internas el pago de $2,000 como la parte de la contribución con la cual estaba conforme, con el fin de invocar la jurisdicción del Tribunal de Contribuciones en cuanto al remanente de la contribución, a tenor con la sección 2–A–3 (a) de la Ley núm. 235, Leyes de

Puerto Rico, 1949 ((1) pág. 733).[1]   El Colector se negó
a aceptar los $2,000 para aplicarlos a la contribución de
1949–50 por el fundamento de que la corporación adeudaba
sumas de dinero por contribuciones sobre la propiedad per-
tenecientes al año anterior.   Su contención fué que si acep-
taba dicho dinero, venía obligado a aplicarlo a las contribu-
ciones adeudadas de conformidad con el artículo 330 del
Código Político, según fué enmendado por la Ley núm. 228,
Leyes de Puerto Rico, 1949 ((1) pág. 695).[2]

El 7 de noviembre de 1949 la Corporación radicó una
querella ante el Tribunal de Contribuciones alegando los
hechos anteriormente reseñados.   Asimismo alegó que la
tasación del Tesorero de sus propiedades para la contribu-
ción de 1949–50 era excesiva; que admitía que adeudaba
cierto dinero de las contribuciones del año anterior, pero que
carecía provisionalmente de fondos con qué pagarlo; que si
se aplicaban los $2,000 a las contribuciones del año anterior,
no tendría fondos para pagar aquella parte de las contri-
buciones de 1949–50 con la cual estaba conforme; que esto
significaría que no podía invocar la jurisdicción del Tribu-
nal de Contribuciones para impugnar el remanente de la con-

[1] La Ley núm. 235 establece un procedimiento uniforme para casos
radicados ante el Tribunal de Contribuciones.   La sección 2-A-3 (a) provee
la revisión de una decisión del Tesorero que envuelva contribuciones territo-
riales, como sigue: "De la imposición de la contribución, notificada en la
forma provista en el Artículo 309 del Código Político Administrativo de
Puerto Rico, pagando la parte de la contribución con la cual estuviere con-
forme el contribuyente y radicando su demanda en el Tribunal de Contri-
buciones de Puerto Rico en la forma dispuesta por la Ley que crea dicho
Tribunal (1) dentro del término de treinta (30) días a partir de la fecha
de la notificación personal provista por el referido Artículo 309; o (2) den-
tro del término de treinta (30) días a partir de la fecha del depósito en el
correo de la notificación de la imposición de la contribución, si la notifica-
ción fuere hecha por correo certificado de acuerdo con dicho Artículo 309;
Disponiéndose, que tanto el término de treinta (30) días para recurrir ante
el Tribunal de Contribuciones de Puerto Rico como el pago dentro de dicho
término de la parte de la contribución con la cual estuviere conforme el
contribuyente, se considerarán de carácter jurisdiccional."

[2] El artículo 330, según fué enmendado, provee en parte como sigue:
"Las contribuciones impuestas sobre el valor de los bienes muebles e inmue-
bles serán pagaderas semestralmente por adelantado, el día primero de julio

tribución de 1949–50 con el cual no estaba conforme; y que carecía de remedio adecuado en ley. La corporación solicitaba (1) un *injunction* prohibiéndole al Tesorero que cobrara las contribuciones de 1949–50 hasta que el Tribunal de Contribuciones tuviera la oportunidad de determinar la cuantía de las mismas; (2) un auto de *mandamus* para obligar al Tesorero a aceptar el ofrecimiento de los $2,000 y a aplicarlos como pago parcial de las contribuciones de 1949–50; y (3) una decisión al efecto de que los $2,000 eran la suma que adeudaba por contribuciones sobre la propiedad para el año 1949–50.

El Tesorero contestó la querella y el Tribunal de Contribuciones celebró una vista. La corte inferior resolvió que el Colector había aplicado erróneamente el artículo 330 del Código Político a los hechos de este caso. La posición de la corte fué que desde que se aprobó originalmente el artículo 330 en 1902, éste "se ha referido a la manera de satisfacer, no de litigar, las contribuciones territoriales"; que, por otro lado, la sección 2–A–3(a) de la Ley núm. 235 es un estatuto procesal que establece el método de invocar la jurisdicción del Tribunal de Contribuciones; que los dos estatutos tratan de diferentes asuntos; y que el sostener la posi-

y de enero de cada año. Dichas contribuciones se convertirán en morosas si no se satisfacen dentro de los sesenta (60) días después de la fecha en que las mismas se vencieron, y los colectores recaudarán sobre dichas contribuciones morosas una suma adicional de medio por ciento sobre el importe de la contribución, por cada mes o fracción de mes desde que dichas contribuciones sean morosas, debiendo recaudarse dicha suma adicional juntamente con el principal de la contribución que la originare, así como las costas de apremio si las hubiere; *Disponiéndose,* que cuando los colectores no tengan en su poder los recibos de contribuciones el primero de julio de cada año, en tal caso el expresado término de sesenta (60) días se contará desde la fecha en que los recibos estuvieren en su poder, y así se anunciare; *Disponiéndose, además, que no se cobrará ni pagará la parte del recibo correspondiente al segundo semestre si no se ha pagado antes el importe del primer semestre, y que, en el caso dé que cualquier contribuyente se encontrare adeudando contribuciones sobre una misma propiedad correspondientes a más de un año económico y deseare satisfacer parte de las mismas, el pago que efectuare será aplicado por el colector a las contribuciones correspondientes a los años anteriores por orden riguroso de vencimiento;* . . . ". (Bastardillas nuestras.)

ción del Colector equivaldría a injertarle a la sección 2-A-3(a) un requisito adicional de jurisdicción que la Legislatura no incluyó, o sea, el pago de las contribuciones territoriales atrasadas.

Sin embargo, el Tribunal de Contribuciones rehusó expedir el auto de mandamus porque éste no tendría fin práctico alguno, ya que tal auto bajo los hechos del presente caso aún no resultaría en el pago de los $2,000 dentro de 30 días, según lo exige la sección 2-A-3(a). En consecuencia, resolvió que carecía de jurisdicción para decidir el caso en los méritos. No obstante, concedió la súplica de la corporación para que se dictara un injunction prohibiéndole al Tesorero que cobrara contribuciones en exceso de $2,000 para el año de 1949-50, hasta que la corporación tuviera oportunidad de ser oída en los méritos. Expedimos el auto de *certiorari* a solicitud del Tesorero para revisar esta decisión.

■■ Los errores señalados por el Tesorero levantan dos cuestiones: (1) el Tribunal de Contribuciones malinterpretó el artículo 330; (2) cometió error al expedir un injunction. El tribunal inferior basó su injunction en su teoría de que el Colector había aplicado erróneamente el artículo 330 a este caso. Concluímos que el Colector actuó erróneamente en su interpretación del artículo 330. Por consiguiente, nunca llegaremos a la cuestión del injunction.

El artículo 330 es de carácter mandatorio. Dispone que cuando se adeudaren contribuciones sobre la misma propiedad por más de un año económico, el pago que se efectúe "será" aplicado a las contribuciones correspondientes a los años anteriores por orden riguroso de vencimiento. Esta disposición no le deja al Colector discreción alguna. Es cierto, según indica el Tribunal de Contribuciones, que el artículo 330 tiene como propósito el pago de la contribución y no su litigación. Pero eso era precisamente lo que trataba de hacer el Colector en este caso; v.g., cobrar contribuciones atrasadas a tenor con la disposición mandatoria de que cualquier suma de dinero ofrecida para el pago de con-

tribuciones territoriales debe aplicarse primeramente a las contribuciones atrasadas más antiguas.

Convenimos con el Tribunal de Contribuciones en que ambos estatutos tratan de diferentes asuntos. Pero eso no quiere decir que no deban interpretarse conjuntamente. Y conjuntamente interpretados, encontramos que antes de que abordemos el problema de los requisitos de la sección 2–A–3(a), el Colector debe primeramente dar cumplimiento al artículo 330. Convenir con el Tribunal de Contribuciones equivaldría a resolver que la Legislatura tuvo por miras derogar implícitamente el artículo 330, cuando un contribuyente moroso deseare litigar las contribuciones territoriales del año en curso. De su faz el artículo 330, que fué enmendado el mismo día en que se aprobó la sección 2–A–3(a), no contiene tal disposición. Por el contrario, la sección 5 de la Ley núm. 235 específicamente dispone que: "Esta Ley no será interpretada en el sentido de extender o limitar la jurisdicción o competencia del Tribunal de Contribuciones de Puerto Rico, ni los derechos concedidos u obligaciones impuestas por la ley a los contribuyentes, a El Pueblo de Puerto Rico, o a los funcionarios de El Pueblo de Puerto Rico."(3)

No nos impresiona la contención de que los $2,000 fueron ofrecidos con el fin de litigar en cuanto al remanente de la contribución a tenor con la sección 2–A–3(a). Indudablemente ése fué el propósito del ofrecimiento. Pero no cabe duda de que fué un ofrecimiento de pago. Y una vez que se ofrece dinero para pagar contribuciones territoriales, en todo o en parte, es de inexorable aplicación el artículo 330.(4)

---

(3) Huelga decir que el Colector no hubiere podido tomar la acción que tomó en este caso si la contribuyente no hubiera pagado toda la contribución para 1948–49 porque estaba litigando la cuestión. Pero como se ha visto, aquí las contribuciones de 1948–49 no solamente estaban sin pagar, sino que la corporación no había hecho esfuerzo alguno para litigar las mismas.

(4) El hecho de que el Gobierno tenga otros métodos de cobrar contribuciones adeudadas, tales como embargos y gravámenes, no afecta nuestra conclusión en cuanto al significado del artículo 330. Véanse los artículos 315, 336–39 del Código Político.

La corporación aduce. dos. argumentos adicionales que pueden ser resueltos con poca discusión. Primeramente, alega que el artículo 330 hace opcional por parte del contribuyente el determinar si desea que el dinero ofrecido sea aplicado a contribuciones adeudadas. No vemos fin práctico alguno en el artículo 330 si se interpreta en esta forma. De cualquier modo, claramente provee actuación mandatoria por parte del Colector. El "deseo" del contribuyente se concreta exclusivamente a su actuación al decidir si. hace o no el ofrecimiento.

En segundo lugar, la corporación arguye que solamente adeuda contribuciones por un solo año económico, y que el artículo 330 por tanto no es aplicable aquí, ya que éste entra en juego solamente cuando se adeudan contribuciones sobre la misma propiedad por más de un año. fiscal. No estamos conformes. La corporación adeudaba contribuciones para el año 1949–50 así como para el 1948–49. En su consecuencia, el artículo 330 es de aplicación a este caso.

*Por los motivos ya expuestos, la sentencia del Tribunal de Contribuciones será modificada eliminando de la misma la disposición sobre el injunction.*